**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| ARTURO BRUNO, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT DONOHOE, as TRUSTEE OF THE TEXAS MEDICAL LIABILITY TRUST,<br><br>    Defendant. | Civil Action No. 1:23-cv-01183-DII |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT TEXAS MEDICAL LIABILITY TRUST'S MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT**

# **Table of Contents**

I.      INTRODUCTION ........................................................................................................... 1

II.     RELEVANT FACTUAL ALLEGATIONS .......................................................... 1

III.    ARGUMENT ................................................................................................................ 2

   A.    Plaintiff's Claims Should Be Dismissed for Lack of Article III Standing ...................... 2

     1.    Plaintiff Bears the Burden of Establishing Standing .................................................... 2

     2.    Plaintiff Must Show Injuries-in-Fact ........................................................................... 3

     3.    Plaintiff Does Not Have Article III Standing to Seek Damages ................................... 3

     4.    Mitigation Efforts Do Not Establish an Injury-in Fact Under Article III ................... 6

     5.    Plaintiff Cannot Show Standing through Alleged Diminution in Value of Personal Information ................................................................................................................... 7

   B.    Plaintiff Failed to State a Claim Upon Which Relief Can Be Based ............................... 7

     1.    Choice of Law ............................................................................................................... 8

     2.    Plaintiff Failed to State a Claim for Negligence .......................................................... 9

     3.    Plaintiff Failed to State a Claim for Negligence *Per Se* ............................................ 10

     4.    Plaintiff Failed to State a Claim for Breach of Fiduciary Duty ................................. 11

     5.    Plaintiff Failed to State a Claim for Unjust Enrichment ............................................ 13

     6.    Plaintiff Failed to State a Claim for Breach of Implied Contract ............................... 14

     7.    Alternatively, Immaterial and Impertinent Allegations Should Be Stricken ............. 15

IV.    CONCLUSION ........................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                                          <u>**Page(s)**</u>

*Acara v. Banks*
    470 F.3d 569 (5th. Cir. 2006) .................................................................................................11

*Ambrosio v. Carter's Shooting Ctr., Inc.*,
    20 S.W.3d 262 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) ......................................10

*Armstrong v. Southwest Airlines Co.*,
    No. 3:20-CV-3610-BT, 2021 WL 4391247 (N.D. Tex. Sept. 24, 2021) ...............................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (U.S. 2009) ......................................................................................................7

*Austin v. Duval*,
    735 S.W.2d 647 (Tex. App.-Austin 1987, writ denied) ........................................................13

*Benchmark Elecs. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003) .................................................................................................8

*Bradix x. Advance Stores Co., Inc*.,
    No. 16-4902, 2016 WL 3617717 (E.D. La. July 6, 2016).......................................................5

*Brazosport Bank v. Oak Park Townhouses*,
    889 S.W.2d 676 (Tex.App.-Houston [14th Dist.] 1994, writ denied)....................................12

*Buxani v. Nussbaum*,
    940 S.W.2d 350 (Tex. App. 1997, no writ) ..........................................................................14

*City of Dallas v. Vills. of Forest Hills, L.P., Phase I*,
    931 S.W.2d 601 (Tex.App.-Dallas 1996, no writ).................................................................13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (U.S. 2013) .................................................................................................3, 6

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) .................................................................................................8

*DynaStudy, Inc. v. Houston Indep. Sch. Dist*.,
    325 F. Supp. 3d 767 (S.D. Tex. 2017)..................................................................................15

*Greater Houston Transp. Co. v. Phillips*,
    801 S.W.2d 523 (Tex. 1990)...................................................................................................9

*Green v. eBay, Inc.*,
   No. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015) ......................................................7

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex. 1992) .................................................................................................13

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
   143 F.3d 1006 (5th Cir. 1998) ...............................................................................................3

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
   No. 19-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ...................................................6, 7

*Jones v. Blume*,
   196 S.W.3d 440 (Tex.App.–Dallas 2006, pet. denied) ....................................................11, 12

*Krottner v. Starbucks Corp.*,
   406 F. App'x 129 (9th Cir. 2010) ...........................................................................................9

*Legg v. Leaders Life Ins. Co.*,
   574 F.Supp.3d 985 (W.D. Okla. 2021) .................................................................................5, 6

*Lincoln v. Turner*,
   874 F.3d 833 (5th Cir. 2017) ..................................................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................................2, 3

*Oliphant Fin., LLC v. Galaviz*,
   299 S.W.3d 829 (Tex. App.–Dallas 2009, no pet.) ...............................................................14

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
   879 F.3d 339 (D.C. Cir. 2018) ................................................................................................4

*Peters v. St. Joseph Services Corp.*,
   74 F. Supp. 3d 847 (S.D. Tex. 2015) ......................................................................................5

*Reeder v. Daniel*,
   61 S.W.3d 359 (Tex. 2001) ....................................................................................................10

*Reynolds v. Murphy*,
   188 S.W.3d 252 (Tex.App.-Fort Worth 2006, pet. denied) .....................................................10

*S. Elec. Servs., Inc. v. City of Houston*,
   355 S.W.3d 319 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ....................................13

*Spokeo, Inc. v. Robins*,

136 S. Ct. 1540 (2016) ....................................................................................................3

*Storm v. Paytime, Inc.*,
90 F. Supp. 3d 359 (M.D. Pa. 2015) ...............................................................................9

*Taylor v. U.S. Bank Nat'l Ass'n*,
No. 12-3550, 2015 WL507526 (S.D. Tex. Feb. 6, 2015)................................................8

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
300 S.W.3d 348 (Tex. App. 2009) .................................................................................13

*TransUnion, LLC v. Ramirez,*
141 S. Ct. 2190 (2021) ............................................................................................3, 4, 5

*Walters v. Blue Cross and Blue Shield of Texas, Inc.*,
2022 WL 902735 (N.D. Tex. Mar. 28, 2022)................................................................10

*Waxler v. Household Credit Servs., Inc.*,
106 S.W.3d 277 (Tex. App. 2003, no pet.)......................................................................9

Zavala v. Trujillo,
883 S.W.2d 242 (Tex.App.-El Paso 1994, writ denied)................................................10

## **Statutes**

15 U.S.C. § 45.........................................................................................................10, 11

45 C.F.R. Part 160 and Part 164 ...................................................................................10

U.S. Const. art. III, § 2 ...................................................................................................2

## **Other Authorities**

Restatement (Second) of Conflict of Laws 145(2) (1971))............................................8

## **Rules**

Fed. R. Civ. P. 12(f)......................................................................................................15

Fed. R. Civ. P. 12(b)(1) and 12(b)(6)............................................................................16

## I.      INTRODUCTION

Plaintiff Arturo Bruno ("Plaintiff") has not been the victim of identity theft. There are no allegations in the Complaint that cybercriminals used his personal information to commit fraud or any other type of nefarious scheme. Further, the Complaint is silent as to whether Plaintiff suffered any type of economic harm stemming from the data security incident suffered by Defendant Texas Medical Liability Trust ("TMLT"). Accordingly, Plaintiff has not suffered any injuries-in-fact and does not have standing to bring this putative class action lawsuit under Article III of the United States Constitution. The Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Even if Plaintiff had standing to pursue this lawsuit, he failed to plead sufficient facts to state a claim for any of the causes of action asserted in the Complaint. The Complaint should therefore also be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## II.     RELEVANT FACTUAL ALLEGATIONS

"TMLT is a private healthcare insurance trust that provide medical malpractice insurance." Compl. ¶ 30.  Plaintiff alleges he was a customer of TMLT. *Id.* at ¶ 16.  On October 12, 2022, TMLT discovered suspicious activity on certain systems in its computer network. *Id.* at ¶ 37. In its Notice of Data Breach, which was dated September 6, 2023, TMLT stated "that unauthorized actors gained access to and squired files on TMLT's network, which included … name, Social Security number, EIN/Tax Identification number, and date of birth." *Id.* at ¶ 18.

Plaintiff Bruno is a Georgia resident. *Id.* at ¶ 15.  Bruno has not alleged anything resembling identity theft, but, instead, alleged that he has spent "time and expense related to monitoring his

financial accounts" and he and Class Members are now "forced to expend additional time to review their credit reports and monitor their medical records for fraud and identity theft . . ." *Id*. at ¶ 21. Plaintiff has not alleged any specific economic harm. Instead, he alleges injuries in the form of a potential increased risk of identity theft, diminution in value of personal information, and "other economic and non-economic harm." *Id*.

Plaintiff seeks to represent a class consisting of "[a]ll persons whose Personal Information or PHI was compromised in the Data Breach occurring in October 2022, including all individuals who Defendant mailed notice to on or around September 6, 2023." *Id*. at ¶ 67.

## III.   ARGUMENT

### A.   Plaintiff's Claims Should Be Dismissed for Lack of Article III Standing

Plaintiff failed to sufficiently plead any factual material showing that he suffered concrete injuries-in-fact sufficient to give rise to standing under Article III of the United States Constitution. The Court should therefore dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

#### 1.   Plaintiff Bears the Burden of Establishing Standing

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. To have standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id*. at 560.

"A case is properly dismissed for lack of subject matter jurisdiction when [a federal] court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion*, *LLC v. Ramirez,* 141 S. Ct. 2190, 2207 (2021). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation," including at the pleading stage. *Lujan,* 504 U.S. at 561.

### 2. Plaintiff Must Show Injuries-in-Fact

To have standing to sue, a plaintiff must have suffered an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416 (2013). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). As for concreteness, "[a] concrete injury must be *de facto*; that is, it must actually exist." *Id.* (internal citations and quotation marks omitted). In other words, it must be "real, and not abstract." *Id.* (internal citations and quotation marks omitted). Because an injury-in-fact cannot be conjectural or hypothetical, mere "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion*, 141 S. Ct. at 2203.

### 3. Plaintiff Does Not Have Article III Standing to Seek Damages

Plaintiff failed to carry his burden to establish standing to pursue this case under Article III. According to the allegations in the Complaint, Plaintiff has not suffered any actual injury, such

as identity theft. Because a plaintiff must have already suffered an injury-in-fact in order to have Article III standing in a case for damages, Plaintiff's claims should be dismissed.

Plaintiff does not allege that he was a victim of identity theft, financial fraud, or any other harm. Instead, Bruno alleges that he "is at an imminent risk of identity theft . . . ." Compl. ¶ 10. A "risk" of identity theft is not identity theft or fraud. Simply put, Plaintiff has failed to allege any risk of future harm that can confer standing. In *TransUnion*, the Supreme Court clarified the standard that a plaintiff must meet when seeking to establish standing on the basis of a potential future injury. In assessing whether the risk of future harm can constitute an injury-in-fact under Article III, the Supreme Court distinguished between claims seeking injunctive relief and claims seeking monetary damages, finding that in a suit for damages, the mere risk of future harm, without more, cannot qualify as a concrete harm sufficient to establish standing. *Id.* at 2211. Instead, the Supreme Court held that a plaintiff must show that the harm actually materialized. *Id.*

In reaching its conclusion, the Supreme Court likened the statutory violation underlying the *TransUnion* plaintiffs' claimed injuries to the common law tort of defamation and explained that "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id.* at 2209 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). In rejecting the argument that risk of future disclosure of a credit report could serve as a concrete harm constituting an injury-in-fact satisfying Article III, the Supreme Court agreed with the argument TransUnion advanced:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does *not* materialize, then the individual

cannot establish a concrete harm sufficient for standing[.]

*TransUnion*, 141 S. Ct. at 2211 (emphasis in original). Similarly, in this case, Plaintiff alleged that his personal information may have been accessible without authorization during the incident, but no allegations of concrete injury exist until it can be proven that information was actually misused in some way.

Before *TransUnion*, the Fifth Circuit had not addressed whether the risk of future identity theft is sufficient to confer standing to a plaintiff in a data breach class action. District courts within the Fifth Circuit, however, had found that a mere risk of future identity theft is not enough to establish standing in a data breach class action. *See Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847, 856 (S.D. Tex. 2015) (finding plaintiff "lacks standing to bring her federal claims to the extent they are premised on the heightened risk of future identity theft/fraud"); *Bradix x. Advance Stores Co., Inc.*, No. 16-4902, 2016 WL 3617717, at *4 (E.D. La. July 6, 2016) (dismissing case where "[a] careful review of Plaintiff's complaint makes it clear there is no certainly impending injury alleged"). This case law is consistent with the Supreme Court's holding in *TransUnion* that risk of future harm is not sufficient to confer standing in a case for monetary damages. *TransUnion*, 141 S. Ct. at 2211

As one decision noted, "[g]iven the holding in *TransUnion*, it is far from clear that any case finding a concrete injury based merely on an abstract risk of future identity theft following a data breach is still good law, at least with respect to a claim for damages." *Legg v. Leaders Life Ins. Co.*, 574 F.Supp.3d 985, 993 (W.D. Okla. 2021). Indeed, in data privacy class actions since *TransUnion*, courts have found plaintiffs lack Article III standing where their purported injuries-in-fact consist of the risk of future identity theft. *See id.* (dismissing case where "Plaintiff only pleads facts showing that there is a non-imminent risk of possible future injury following the data

breach, [which] is not sufficient to confer standing"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *10 (D.N.J. Dec. 16, 2021) (dismissing claims brought by plaintiffs alleging risk of future identity theft who "fail to account for . . . the Supreme Court's recent admonition that an unmaterialized risk of future of harm cannot confer standing in a claim for damages"). Plaintiff has not suffered identity theft or any other already-materialized harm stemming from the TMLT data security incident, and he does not have standing to seek monetary damages.

### 4. Mitigation Efforts Do Not Establish an Injury-in Fact Under Article III

Attempting to allege some type of redressable injury, Plaintiff also claims he was forced to spend time and money on mitigation efforts related to the risk of identity theft. But if the risk of future identity theft itself cannot establish standing, Plaintiff cannot manufacture standing by incurring self-imposed costs.

Although Plaintiff generally alleges that he incurred out-of-pocket expenses and lost time mitigating the consequences of the breach, he has not included any specific factual allegations regarding how he incurred out-of-pocket expenses or how he "lost time" through mitigation efforts. Compl. ¶¶ 23, 86. Even if he had included such allegations, however, a plaintiff cannot "manufacture standing" simply by "incur[ing] certain costs as a reasonable reaction to a risk of harm." *Clapper*, 568 U.S. at 416. Here, where the harm of identity theft failed to materialize, Plaintiff cannot use mitigation efforts to create Article III standing where it does not already exist. "Thus, while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury" sufficient to confer standing to seek damages. *Legg*, 574 F.Supp.3d at 994.

### 5.      Plaintiff Cannot Show Standing through Alleged Diminution in Value of Personal Information

Plaintiff also argues that he suffered injuries in the form of "diminution of value of their PII/PHI." Compl. ¶ 10. Bruno has not—and cannot—offer any factual support for this argument.

The decisions that have accepted diminution in value of personal information to establish standing "involved circumstances where the defendants collected information that was itself monetized and used for commercial purposes." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *10. "The [Complaint] here contains no similar allegation. Absent such circumstances, there is no loss of value in the information sufficient to state a concrete injury." *Id*.; *see also Green v. eBay, Inc.*, No. 14-1688, 2015 WL 2066531, *5 n.59 (E.D. La. May 4, 2015) ("Plaintiff has failed to allege facts indicating how the value of his personal information has decreased as a result of the Data Breach."). Plaintiff offered no factual support for the conclusory argument this his information lost value. Accordingly, he cannot rely on this theory to establish standing.

### B.      Plaintiff Failed to State a Claim Upon Which Relief Can Be Based

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of

minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

Plaintiff failed to plead sufficient facts to support any of the causes of action set forth in the Complaint.

### 1.    Choice of Law

As an initial matter, the Court must decide which state's law to apply. A federal court sitting in diversity jurisdiction applies the choice of law rules from the forum state. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (internal citation omitted). Under Texas choice of law rules, "courts look to 'the law of the state with the most significant relationship to the particular substantive issue . . . to resolve that issue, except in those contract cases in which the parties have agreed to a valid choice of law clause." *Taylor v. U.S. Bank Nat'l Ass'n*, No. 12-3550, 2015 WL507526, at *5 (S.D. Tex. Feb. 6, 2015) (internal citation and quotation marks omitted). In making this determination, courts consider factors including "1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and 4) the place where the relationship, if any, between the parties is centered." *Id.* (citing Restatement (Second) of Conflict of Laws 145(2) (1971)).

Here, Plaintiff is a resident of Georgia. Compl. ¶ 15. TMLT is a Texas corporation with its headquarters in Texas, where it conducted the business that was the subject of the cyberattack. *Id.* at ¶ 28. For purposes of this Motion, TMLT applies Texas law.

### 2.      Plaintiff Failed to State a Claim for Negligence

Plaintiff has not included any factual information in the Complaint that shows that he suffered any damages as a result of the TMLT data security incident. He has, therefore, failed to state a cause of action for negligence.

Under Texas law, the elements of a cause of action for negligence are (1) a legal duty owed by one person to another; (2) a breach of that duty; (3) the breach was an actual cause of injury; and (4) actual injury. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990). "Because actual injury is an element of a negligence claim, [a]n action for negligence cannot be maintained unless some damages result therefrom." *Waxler v. Household Credit Servs., Inc.,* 106 S.W.3d 277, 280 (Tex. App. 2003, no pet.) (internal citation and quotation marks omitted).

Plaintiff does not allege that there is any ongoing, present harm, such as a fraudulent bank account or non-reimbursed fraudulent charges, resulting from the alleged negligence. Nor does Plaintiff allege any specific economic damage. Instead, he relies on the risk of future identity theft, undefined future mitigation expenses relating to identity theft losses or protective measures, lost opportunity costs, and loss of value in his personal information. These are not compensable damages for a negligence claim in data breach litigation. *See, e.g., Krottner v. Starbucks Corp.,* 406 F. App'x 129, 131 (9th Cir. 2010) (data breach plaintiffs "have not established a cognizable injury for purposes of their negligence claim" because "[t]he alleged injuries here stem from the danger of future harm"); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 367-68 (M.D. Pa. 2015) (no actual injury based on preventative measures taken to prevent future injury in connection with data breach). Plaintiff has not alleged facts showing actual injury. Accordingly, Count I should be dismissed.

### 3.    Plaintiff Failed to State a Claim for Negligence *Per Se*

In Plaintiff's Second Count, he asserts a cause of action for negligence *per se*, relying on the HIPAA Privacy Rule, specifically 45 C.F.R. Part 160 and Part 164, as well as Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Compl. ¶ 88, 89.

Under Texas law, to establish negligence *per se*, a plaintiff must prove: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." *Ambrosio v. Carter's Shooting Ctr., Inc.,* 20 S.W.3d 262, 265 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Negligence *per se* is not a separate cause of action that exists independently of a common-law negligence cause of action. *Zavala v. Trujillo,* 883 S.W.2d 242, 246 (Tex.App.-El Paso 1994, writ denied). Rather, negligence *per se* is merely one *method* of proving a breach of duty, a requisite element of any negligence cause of action. *Reynolds v. Murphy,* 188 S.W.3d 252, 267 n. 20 (Tex.App.-Fort Worth 2006, pet. denied) (quoting *Zavala,* 883 S.W.2d at 246). Significantly, a statute is not an appropriate basis for a negligence *per se* claim when "a legislative body declines to provide for an individual private right of action in a statute and instead provides a comprehensive regulatory scheme with limited private remedies." *Armstrong v. Southwest Airlines Co.,* No. 3:20-CV-3610-BT, 2021 WL 4391247, at *3 (N.D. Tex. Sept. 24, 2021) (citing *Reeder v. Daniel,* 61 S.W.3d 359, 362-63 (Tex. 2001)).

Plaintiff's claim that HIPAA can serve as a basis for a negligence *per se* is without merit, considering HIPAA does not provide a private cause of action. In *Walters v. Blue Cross and Blue Shield of Texas, Inc.,* 2022 WL 902735 at *6 (N.D. Tex. Mar. 28, 2022), the court dismissed plaintiff's negligence *per se* claim and held that the statute is not a proper basis for a negligence

*per se* claim under Texas law since the statute does not contain a private right of action. Similarly, the court in *Acara v. Banks*, 470 F.3d 569, 571 (5th. Cir. 2006), held that HIPAA does not provide for a private a cause of action. Therefore, Plaintiff cannot sustain a negligence *per se* claim on this basis.

Likewise, the general guidelines promulgated by the FTC, which do not even rise to the level of an administrative rule and provide only broad recommendations for businesses to secure personal information, are not legislative enactments and do not provide the requisite positive and definite standard of care. Thus, the guidelines promulgated by the FTC cannot serve as the basis for a cause of action of negligence *per se* under Texas law since the FTC Act does not provide for a private cause of action. 15 U.S.C. § 45.

Further, like the negligence claim, Plaintiff's negligence *per se* claim fails because Plaintiff has not pled any facts showing that they suffered any cognizable damages from any of TMLT's alleged violations of Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Therefore, considering HIPAA and the FTC do not provide for a private right of action and Plaintiff failed to plead cognizable, concrete damages, TMLT asks this Court to dismiss Plaintiff's Third Cause of action.

**4.       Plaintiff Failed to State a Claim for Breach of Fiduciary Duty**

Under Texas law, the elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in an injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.–Dallas 2006, pet. denied).

Plaintiff alleges that he and Class Members provided TMLT with their PII, believing that TMLT would protect such information and would not have provided their information had they known their data would not have been protected. Comp. ¶ 99. Further, Plaintiff alleged that "TMLT has a fiduciary duty to act for the benefit of Plaintiff and Class Members," and "breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class Members' PII/PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard the PII/PHI." *Id.* at ¶ 100. Plaintiff also alleged that as a direct and proximate result of TMLT's breach, Plaintiff suffered from injuries including, future risk of identity theft, out of pocket expenses, lost opportunity costs, continued risk to PII/PHI and actual or attempted fraud. *Id.* at ¶ 101.

"A fiduciary relationship may arise from informal moral, social, domestic, or personal dealings, as well as from technical relationships." *See Brazosport Bank v. Oak Park Townhouses*, 889 S.W.2d 676, 683 (Tex.App.-Houston [14th Dist.] 1994, writ denied); see also *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.-Dallas 2006, pet. denied) ("A fiduciary relationship may be formal or informal. Fiduciary duties arise as a matter of law in certain formal relationships").

Plaintiff's Complaint fails to sufficiently allege any factual basis for a relationship between Plaintiff and TMLT, which would rise to the level of a fiduciary relationship wherein TMLT owed Plaintiff any of the alleged duties. Plaintiff alleges that Plaintiff and Class Members directly or indirectly provided TMLT with their PII/PHI, which TMLT accepted, and this created a fiduciary relationship. *Id.* at ¶ 99. However, this is an ordinary business transaction between Plaintiff and TMLT and does not rise to the level of a fiduciary relationship, which includes additional duties that were not agreed upon between the parties. Thus, Plaintiff failed to demonstrate that a fiduciary relationship existed between Plaintiff and TMLT.

In addition, Plaintiff's breach of fiduciary duty claim fails to allege that Plaintiff and Class Members suffered any concrete, cognizable injuries beyond the mere future risk of injury as a result of the incident. Plaintiff has not alleged any actual out-of-pocket monetary loss due to the cybercriminal attack resulting in the Data Incident. Nor does Plaintiff plead specifics as to how much time or money he spent dealing with the incident as a result of the breach and instead put forth only general and speculative allegations. Under Texas law, parties may not recover for speculative damages. *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *City of Dallas v. Vills. of Forest Hills, L.P.*, *Phase I*, 931 S.W.2d 601, 605 (Tex.App.-Dallas 1996, no writ). Plaintiff has failed to allege any harm, which materialized and stem from the alleged breach of duty, and thus, the Court must dismiss Plaintiff's claim for breach of fiduciary duty.

### 5.    Plaintiff Failed to State a Claim for Unjust Enrichment

Under Texas law, unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc*., 300 S.W.3d 348, 367 (Tex. App. 2009). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The Texas Supreme Court has cautioned that "[u]njust enrichment is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant." *Heldenfels Bros.*, 832 S.W.2d at 42 (quoting *Austin v. Duval*, 735 S.W.2d 647, 649, (Tex. App.-Austin 1987, writ denied)).

Here, Plaintiff alleged that he "conferred a monetary benefit upon TMLT in the form of monies paid for healthcare services or other services." Comp. ¶ 104. Further, Plaintiff alleges that TMLT accepted the benefits conferred and as a result of "TMLT's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices." Plaintiff has not conferred any benefit upon TMLT that would be unjust for TMLT to retain, considering TMLT provided medical malpractice insurance in exchange for monetary compensation. Considering TMLT did not unjustly retain any benefits and Plaintiffs did not confer any additional benefits upon TMLT, Count IV should be dismissed.

### 6. Plaintiff Failed to State a Claim for Breach of Implied Contract

To state a claim for breach of implied contract, a plaintiff must allege facts showing that there was a meeting of the minds on the terms of the alleged contract. That is a showing that Plaintiff has not—and cannot—make.

Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 834 (Tex. App.–Dallas 2009, no pet.). "Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App. 1997, no writ). "In a contract implied in fact, which is the same as an express contract except for the manner of proof, the element of mutual assent can be inferred from the circumstances of the transaction." *Id.* (internal citation and quotation marks omitted).

14

Plaintiff alleges that "TMLT required Plaintiff and Class Members to provide, or authorize the transfer of, their PII/PHI in order for TMLT to provide services. Compl. ¶ 110. In exchange, TMLT entered into implied contracts with Plaintiff and Class Members in which TMLT agreed to comply with its statutory and common law duties . . . ." *Id.* There was no meeting of the minds here. Plaintiff does not allege that TMLT made any particular representations about data security as part of that alleged transaction or indicated an intention to be contractually bound in any other way. Further, as explained above, Plaintiff has not suffered any damages.

Plaintiff never entered into an implied contract with TMLT and has not suffered any damages. Count V[1] should be dismissed.

### 7. Alternatively, Immaterial and Impertinent Allegations Should Be Stricken

If the Court does not dismiss the Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case.

Federal Rule of Civil Procedure 12(f) permits a court to strike immaterial and impertinent allegations from a pleading on its own or upon motion by a party. *See* Fed. R. Civ. P. 12(f). A motion to strike under Rule 12(f) should be granted "when the pleading to be stricken has no possible relation to the controversy." *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 772 (S.D. Tex. 2017) (internal citation and quotation marks omitted).

Instead of focusing solely on the relevant data security incident and Plaintiff's individual experiences, Plaintiff added extraneous material concerning the actions of identity thieves and statistics about cybercrime. *See* Compl. ¶¶ 46 - 62. Plaintiff pled no actual facts regarding the motivations of the cybercriminals who executed the attack on TMLT. To make up for that missing information, Plaintiff includes immaterial and generalized allegations that are designed to

---

[1] Improperly identified in the Complaint as Count IV.

improperly inflame the issues and lend weight to the alleged risk of future identity theft. Plaintiff should limit the Complaint to the TMLT data incident and his individual experiences, and the Court should strike paragraphs 46 – 62 pursuant to Rule 12(f).

## IV.    CONCLUSION

For all the foregoing reasons, Defendant TMLT respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the event the Court does not dismiss the Complaint, TMLT respectfully requests that it strike paragraphs 46 - 62 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

Dated: December 8,  2023                      Respectfully submitted,

*/s/ Amanda Harvey*
Amanda Harvey
TX Bar No. 24046038
**MULLEN COUGHLIN LLC**
1452 Hughes Road, Suite 200
Grapevine, TX 76051
Phone: (267) 930-1697
Fax: (267) 930-4771
aharvey@mullen.law

Kayleigh Watson
TX Bar No. 24102632
**MULLEN COUGHLIN LLC**
1452 Hughes Road, Suite 200
Grapevine, TX 76051
Phone: (267) 930-2306
Fax: (267) 930-4771
kwatson@mullen.law

*Counsel for Defendant*

16