# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

ARTURO BRUNO, individually and on behalf
of all others similarly situated,

                    Plaintiff,

       v.

ROBERT DONOHOE, as TRUSTEE OF
THE TEXAS MEDICAL LIABILITY
TRUST,

                  Defendant.

Civil Action No. 1:23-cv-01183-DII

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

I.    **INTRODUCTION**

On July 10, 2025, this Court preliminarily approved a proposed class action settlement between Plaintiff Arturo Bruno, individually on behalf of himself and all other persons similarly situated ("Plaintiff"), and Defendant Texas Medical Liability Trust ("Defendant" or "TMLT") (collectively, "the Parties"), and authorized the implementation of the Notice Program described in this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and declaration of the proposed Settlement Administrator. ECF 37. Class Counsel now move for final approval. The settlement is fair, reasonable, and adequate. After the dissemination of notice, it has been seen that the Class overwhelmingly supports the Settlement, with only one timely opt-out received as of now, out of over 57,177 class members, and zero objection as of now. The dissemination of Notice through the direct mailing of the Postcard Notice via U.S mail and publishing of the Notice on the Settlement Website in the manner set forth in the Notice Program was the best practicable under the circumstances and reached 90.05 percent of the Settlement Class. This meets any due process concerns, far exceeding the Federal Judicial Guideline of 70%. *See Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 906 (8th Cir. 2018) (reach of 73.7%, or possibly as low as 49% of class members, satisfied due process).

This Court should grant final approval and also grant Plaintiff's Motion for an Award of Attorneys' Fees, Costs and Expenses, and Service Award, for the reasons stated in the Memorandum in Support, and in the separate motion seeking Attorneys' Fees, and because there is no valid opposition to the Settlement or the requested attorneys' fees, costs and expenses, and service award.

I.    **CASE SUMMARY**

## A.     Factual Background.

On October 12, 2022, Texas Medical Liability Trust ("Defendant" or "TMLT") discovered suspicious activity on certain systems in its computer network. ("Date Incident") Specifically, unauthorized actors gained access to and acquired files on Defendant's network, which included Private Information of impacted individuals including their name, Social Security number, EIN/Tax Identification number, and/or date of birth. Accordingly, in March 2023, Defendant began notifying the 59,901 potentially affected individuals. The Private Information affected by the Data Incident included a wide variety of information, which in the hands of cyber criminals can result in identity theft.

## B.     The Litigation.

Following the investigation conducted by Class Counsel, it was alleged that Defendant failed to safeguard Private Information that it maintained regarding Plaintiff and Settlement Class Members. Defendant denied all liability and wrongdoing.

Plaintiff, Arturo Bruno, filed a Class Action Complaint on behalf of the Settlement Class Members, on September 29, 2023, alleging that Defendant failed to safeguard Private Information that it maintained regarding Plaintiff and Settlement Class Members and asserting causes of action for: (1) Negligence; (2) Negligence Per Se; (3) Breach of Fiduciary Duty; (4) Unjust Enrichment; and (5) Breach of Implied Contract. ECF 1. Defendant then filed a Motion to Dismiss alleging lack of Article III standing, which was responded to by the Plaintiff, and followed up with an amended complaint filed on February 2, 2024. ECF 9 and ECF 16. Defendant then filed another motion to dismiss the amended complaint. ECF 17. The Parties then requested a stay and participated in virtual mediation with Hon. Wayne Andersen (R.) on April 4, 2024, however, the case did not settle, and the Plaintiff accordingly filed his response in opposition to the motion to dismiss and

the Defendant filed a reply to the response. ECF 20 and ECF 21. The Court then entered its order granting in part and denying in part Defendant's motion to dismiss and order denying its motion to strike. ECF 25.

Soon after the entry of the order, the Parties began discussing the prospect for another attempt at mediation. Accordingly, on March 26, 2025, the Parties engaged in a full-day, in-person mediation session before John DeGroote, a nationally recognized and experienced mediator with expertise in data breach class actions. Over the course of the day, the Parties engaged in arm's length, hard-fought negotiations, and with the assistance of Mr. DeGroote, the Parties reached an agreement in principle, the terms of which were later finalized by way of the Settlement Agreement and its attached exhibits. The Settlement Agreement was executed, subject to preliminary and final approval by the Court. ECF 34. Accordingly, on July 10, 2025, this Court preliminarily approved the proposed class action settlement. ECF 37.

### C.    Settlement Benefits.

The Settlement Agreement negotiated on behalf of the Settlement Class provides for the creation of a non-reversionary cash settlement fund in the amount of one million United States Dollars ($1,000,000.00) (Settlement Amount) (the "Settlement Fund"). SA II ¶61. The Settlement Fund shall be used to pay for (1) Settlement Class Member Benefits to those Settlement Class Members who submit a Valid Claim; (2) any Service Award-awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel; and (4) all Settlement Administration Costs. SA III ¶65. The Settlement Agreement provides further that the Settlement Fund shall be paid to the Settlement Administrator as follows: (i) within twenty (20) days of the Preliminary Approval Order, Defendant will pay all costs associated with notifying the Settlement Class Members in an amount estimated by the Settlement Administrator; and (ii) within thirty (30) days of the Effective Date, Defendant shall pay into a Qualified Settlement Fund to be established and

maintained by the Settlement Administrator the remaining portion of the Settlement Fund; and, (iii) within thirty five (35) days of the Effective Date, the Settlement Administrator shall pay to Class Counsel any attorneys' fees, costs, expenses, and service award as awarded by the Court. SA III ¶64.

In no event shall Defendant be obligated to pay more than one million United States Dollars ($1,000,000.00) in connection with the Settlement. *Id.*

### 1. Reimbursement for "Ordinary" Out-of-Pocket Losses and Ordinary Attested Time

All Settlement Class Members may submit a claim for Ordinary Out-of-Pocket Losses and/or Ordinary Attested Time up to a total of two thousand five hundred dollars ($2,500.00) per Settlement Class Member. SA V ¶69.

The Settlement Fund will be used to pay valid and timely submitted claims for each of the following categories of Ordinary Out-of-Pocket Losses: (1) costs associated with accessing or freezing/unfreezing credit reports with any credit-reporting agency; (2) other miscellaneous expenses incurred related to any Ordinary Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (3) credit monitoring or other mitigative costs. SA V ¶69.1. Such claims will be evaluated by the Settlement Administrator as per the process set out in the Settlement Agreement.

Whether or not they incurred Ordinary Out-of-Pocket Losses, Settlement Class Members may also submit a claim for up to five (5) hours of time spent responding to receiving notice of the Data Incident at a rate of thirty dollars ($30.00) per hour. SA V ¶69.3.

### 2. Reimbursement for "Extraordinary" Losses and Extraordinary Attested Time

In addition to submitting a claim for Ordinary Out-of-Pocket Losses and/or Ordinary Attested Time, Settlement Class Members who believe they have suffered identity theft, fraud, or

other extraordinary losses may submit a claim for Extraordinary Losses and/or Extraordinary Attested Time up to thirty-five thousand dollars ($35,000.00) per individual, in the aggregate, as set forth in the Settlement Agreement. SA V ¶70. The total amount of compensation that can be claimed for Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses and Extraordinary Attested Time cannot exceed thirty-five thousand dollars ($35,000.00) per individual. *Id*. Such claims will be evaluated by the Settlement Administrator as per the process set out in the Settlement Agreement, which specifies that Claims for Ordinary Out-of-Pocket Losses and Extraordinary Losses shall be "fairly traceable" and require supporting third-party documentation. SA V, ¶69.2;¶70.2-70.3. Settlement Class Members who incur Extraordinary Losses may also submit a claim for up to ten (10) hours of time spent remedying identity theft, fraud, or other misuse of their information related to the Data Incident at a rate of thirty dollars ($30.00) per hour. SA V ¶70.4. The total Attested Time ("Ordinary" and "Extraordinary" Attested Time, combined) that can be claimed cannot exceed ten (10) hours. *Id*.

### 3. Credit Monitoring Services

Settlement Class Members, regardless of whether they make a claim for reimbursement, can elect to enroll in three (3) years of three bureau identity theft protection and credit monitoring services under the Settlement Agreement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. SA V ¶71. The cost of providing the credit monitoring services described here shall be paid from the Settlement Fund.

### 4. *Pro Rata* Increase or Reduction of Approved Claims

If the total amount of Approved Claims submitted (as determined in SA Section V), when aggregated with Settlement Administration Costs and Attorneys' Fees, Costs, and Service Award as approved by the Court exceeds the amount of the Settlement Fund, then Approved Claims under SA Section V shall be reduced on a pro rata basis such that the total aggregate amount of Approved Claims under SA Section V, Settlement Administration Costs and Attorneys' Fees, Costs, and Service Awards does not exceed the amount of the Settlement Fund. SA V ¶73. If the total amount of Approved Claims submitted under SA Section V, when aggregated with Settlement Administration Costs and Attorneys' Fees, Costs, and Service Awards as approved by the Court, is less than the amount of the Settlement Fund, then Approved Claims under SA Section V shall be increased on a pro rata basis such that the total aggregate amount of Approved Claims under SA Section V, Settlement Administration Costs and Attorneys' Fees, Costs, and Service Awards equals (as reasonably close as possible without exceeding) the amount of the Settlement Fund. *Id.* The Settlement Administrator shall reasonably exercise its discretion for purposes of implementing any pro rata increase or reduction provided herein to account for estimated, but not yet incurred, Administration and Notice Costs. For the avoidance of doubt, in no event shall Defendant's liability or obligation under the Settlement Agreement exceed the Settlement Fund. *Id.*

**5. Payment of Approved Claims**

Approved Claims will be paid via an electronic payment, or a check mailed to the Settlement Class Member. SA V ¶74. Settlement Class Members will have ninety (90) days to cash the checks or electronically receive the payment, after which any uncashed checks will be void and the ability to receive the electronic payment will expire. *Id.* If the aggregate value of void checks and lapsed electronic payments makes it economically feasible, such funds (after decreasing the total by the cost of any anticipated tax reporting requirements and other ancillary

expenses) will be disbursed pro rata via a second round of payments issued to those who successfully received electronic payments or cashed checks issued during the first round of disbursement. *Id.* After ninety (90) days of the second disbursement, any uncashed checks will be void and the ability to receive electronic payment will also expire. *Id.* The aggregate value of void checks and unclaimed electronic payments after the second round (or, if there is no second round of checks, after the first round of checks) and/or remaining funds following the preparation of any required tax documents will be paid to increase the length of credit monitoring for those who elect it if possible, or if not, to the Texas Bar Foundation, if approved by the Court. *Id.* However, if the second round of payments is not economically feasible, funds remaining in the Settlement Fund will be directly given to The Texas Bar Foundation, if approved by the Court. *Id.*

### 6. Business Practice Changes

In response to the Data Incident and the Action, Plaintiff has received assurances from Defendant that Defendant has undertaken reasonable steps to further secure its systems and environment. SA V ¶75.

### A.    Preliminary Approval and Notice.

On July 10, 2025, this Court entered an Order granting preliminary approval of the Settlement. ECF 37. The Court found, upon a preliminary review, that "The terms of the Settlement, including its proposed releases, are preliminarily approved as within the range of fair, reasonable, and adequate, and are sufficient to warrant providing notice of the Settlement to the Settlement Class in accordance with the Notice Program." *Id*. at 7.

## II.    The Notice and Claims Process.

The notice and claims process was implemented pursuant to the Court's Preliminary Approval Order, as follows:

### A.    Notice.

In its Preliminary Approval Order, the Court appointed Kroll Settlement Administrator, LLC ("Kroll" or "Settlement Administrator") as the Settlement Administrator. ECF No. 37 ¶ 9. The Settlement Administrator, in accordance with the Court's Preliminary Approval Order, provided notice to the Settlement Class in the manner set forth below:

On August 8, 2025, Kroll caused the mailing of 57,177 Postcard Notices via first-class mail. Dec. of Settlement Admin ¶ 9. As of September 23, 2025, 150 Postcard Notices were returned by the USPS with a forwarding address. *Id.* at ¶10. These Postcard Notices were automatically re-mailed to the updated addresses provided by the USPS. *Id.* As of September 23, 2025, 11,272 Postcard Notices were returned by the USPS as undeliverable as addressed, without a forwarding address. *Id.* at ¶11. Kroll ran 11,272 undeliverable records through an advanced address search. *Id.* The advanced address search produced 5,584 updated addresses. *Id.* Kroll has re-mailed Postcard Notices to the 5,584 updated addresses obtained from the advanced address search. *Id.*

Based on the foregoing, following all Postcard Notice re-mailings, Kroll has reason to believe that Postcard Notices likely reached 51,489 of the 57,177 Settlement Class Members, which equates to a reach rate of the direct mail notice of approximately 90.05%. *Id.* at ¶12. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[1] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[2] *Id.*

The Settlement Administrator is also responsible for (a) establishing and maintaining the Settlement Fund in the Escrow Account approved by the Parties; (b) establish and maintaining a

---

[1] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[2] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d ed. 2010).

post office box to receive opt-out requests from the Settlement Class and objections from Settlement Class Members, and Claim Forms; (c) establishing and maintaining a Settlement Website which allows for electronic submission of Claim Forms and provide important information about the Settlement; and (d) establishing and maintaining an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class. SA VII ¶22.

### B.    Class Response

Through the notice process, Settlement Class Members were given the means to make a claim, request exclusion, or object to the Settlement, the deadline for which is October 6, 2025. As of September 23, 2025, the Settlement Administrator had received only one request for exclusion and *had not received any* objection to the settlement. *Id.* ¶ 17.

## III.    THE SETTLEMENT CLASS

The proposed nationwide Settlement Class includes "all person in the United States whose Private Information was potentially accessible as a result of the Data Incident, including those who were sent notification from Defendant that their Private Information was potentially accessible as a result of the Data Incident." SA II ¶ 58.

## IV.    LEGAL STANDARD.

The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23 factors. In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019); *see Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-

JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); see also FED. R. CIV. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

"When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003). *See also In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), aff'd sub nom ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or

speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

"Nothing has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co*., No. 5:17-CV-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021). In fact, the response of the Settlement Class Members to the Settlement (one request for exclusion and no objections from Settlement Class Members, yet) further underscores that the Settlement is, in fact, fair, reasonable, and adequate. For these reasons, and for the additional reasons Class Counsel will show the Court below, the Court should grant the instant motion seeking final approval of this Settlement.

## V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE PURSUANT TO RULE 23(E) AND THE FIFTH CIRCUIT REED FACTORS.

The Settlement in these combined actions is fair, reasonable, and adequate under both the Rule 23(e) factors and the Fifth Circuit's *Reed* factors, and the Court should finally approve the settlement.

### A.    Plaintiff and Class Counsel Have Provided First-Rate Representation to the Settlement Class.

Plaintiff and Class Counsel have provided excellent representation for the Settlement Class and satisfy the adequacy of representation factor under Rule 23(e)(2)(A). Plaintiff has no conflicts of interest with other Settlement Class Members, is subject to no unique defenses, and Class Counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. *See generally* Bruce Dec, ECF 34-5. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See generally* Bruce Dec, ECF 34-5; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach*

*Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). Class Counsel also conducted a thorough investigation of the facts both before and during the course of the Litigation. This investigation allowed Class Counsel to better understand the key factual issues at the core of the Litigation in negotiating the Settlement, *i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

Having completed their investigation and given the risks of no recovery at all, Class Counsel, together with Plaintiff, settled this Litigation on a favorable basis to the Settlement Class without unduly prolonging it and without the expense and risk of a trial and any subsequent appeals. Accordingly, Plaintiff and Class Counsel have adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A).

### B. The Settlement was the Result of Arms-length Negotiations and Without Fraud or Collusion.

The Settlement should be approved under Rule 23(e)(2)(B) and the first *Reed* factor. As previously stated, before the complaint was filed, Class Counsel investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers. Thus, Class Counsel's appreciation of the merits of this case prior to Settlement, and their extensive experience in litigating other class cases in this area of the law throughout the country, allowed them to engage in vigorous, arms-length negotiations with Defendant. *See In re Heartland Payment Sys.,* 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information

to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The Parties engaged in two in extensive arm's-length negotiation sessions before Settlement was reached. First, the Parties engaged in a virtual mediation with Hon. Wayne Andersen (R.) on April 4, 2024, however, the case did not settle, and it ended at an impasse, after which the Parties resumed litigating the case. After almost a year, the Parties began discussing the prospect for another attempt at mediation. Accordingly, on March 26, 2025, the Parties engaged in a full-day, in-person mediation session before John DeGroote, a nationally recognized and experienced mediator with expertise in data breach class actions. Since the case had progressed further, it allowed Class Counsel to fully evaluate the strengths and weaknesses of Plaintiff's case, and to conduct informed settlement negotiations. Accordingly, over the course of the day, the Parties engaged in arm's length, hard-fought negotiations, and with the assistance of Mr. DeGroote, the Parties reached an agreement in principle, the terms of which were later finalized by way of the Settlement Agreement and its attached exhibits.

"The involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e); *see also Welsh v. Navy Fed. Credit Union,* No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary."). "The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein*, 705 F. Supp. 2d at 651 (quoting *Liger v. New Orleans Hornets NBA Ltd. P'ship*, Civ. A. No. 05-1969, 2009 WL 2856246, at *3 (E.D.La. Aug. 28, 2009)). Here, not only is the Settlement the result of

arm's-length negotiations as discussed above, but the matter of attorneys' fees was not discussed until after the class benefits were reached. Thus, there is no threat of fraud or collusion affecting the fairness of the settlement negotiations. *See In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (citing *In re Combustion, Inc.*, 968 F. Supp. 1116, 1127 (W.D. La. 1997) ("Further, testimony was presented that the matter of attorneys' fees was not negotiated in conjunction with the settlement agreements but left for separate determination by the Court.")).

Given the arm's-length negotiations that resulted in the proposed Settlement and that there is no evidence of fraud or collusion, the Settlement is fair, reasonable, and adequate under Rule 23(e)(2)(B) and the second *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(B); *Reed*, 703 F.2d at 172.

## C. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)).

Here, by negotiating a Settlement at an early stage of the litigation, the parties ensured that Settlement Class Members will receive the substantial benefits described above while avoiding the risks and potential pitfalls of prolonged litigation. While confident in the strength of their claims, Plaintiff and Class Counsel are also pragmatic and recognize the risks inherent in litigation of a complex Data Incident case. *See* ECF 34-5 ¶21.

The risks, expense, complexity, and likely duration of further litigation support final approval of the Settlement. *Id.*, ¶ 23. Should the case proceed in litigation, Plaintiff's claims could

be dismissed or narrowed at trial, or on a subsequent appeal. Plaintiff also faces the risk that class certification could be denied or that key expert testimony could be excluded. While Plaintiff would fight the case and believes in its merits, he recognizes the risks that could impede the successful prosecution of these claims at trial and in an eventual appeal—which could possibly result in reduced or delayed recovery for the Class.

In contrast, the Settlement provides immediate and substantial benefits to the Settlement Class Members —similar to or better than the relief and benefits obtained in other data breach class actions—and on a much quicker timeline. For example, a recent proposed settlement in a data breach class action involving more than 3 million people settled for only $2.3 million. *See Kostka v. Dickey's Barbeque Restaurants, Inc*., Case No. 20-cv-3424, ECF 62 (N.D. Tex.); *see also, e.g., Fehlen v. Accellion, Inc.*, Case No. 21-cv-01353 (N.D. Cal.) (proposed settlement of $8.1 million for 9.2 million class members who had their Social Security Numbers compromised); Final Approval Order, *In re Banner Health Data Breach Litigation*, No. 2:16-cv-02696-PHX, ECF No. 198 (D. Az.) (up to $6 million claims-made settlement after 3 years of litigation where breach compromised names, Social Security numbers, and PHI of approximately 2.9 million class members).

This case is settling in its early stages; if the Settlement is not finally approved, the Parties will likely need to litigate through multiple dispositive motions, a motion for class certification, a potential motion to decertify the class, and multiple *Daubert* motions, among other things. That process would likely take years to resolve and involve expensive expert discovery. Yet there is no guarantee lengthy litigation and expensive discovery would lead to greater benefits for Settlement Class Members. Instead, there would be multiple inflection points at which the Settlement Class

Members' claims could be narrowed or dismissed. An early resolution, before both sides spend significant sums on litigation costs, is in the best interest of the Settlement Class.

In short, "settling now avoids the risks and burdens of potentially protracted litigation." *Ayers*, 358 F.3d at 369. While Plaintiff strongly believes in the merits of his case, he also understands the risks of continued litigation. As a federal court decision noted:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Plaintiffs also faced the risk that [defendant] would successfully oppose class certification, obtain summary judgment on one or more of their claims, or win at trial or on appeal. Also, the cost for [defendant] and Plaintiffs to maintain the lawsuit would be high, given the amount of documentary evidence as well as the expert costs both parties would incur in the context of class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

*Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). Thus, the Settlement should be finally approved under Rule 23(e)(2)(C)(i) and the second *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

### D.    The State of Litigation and the Available Discovery.

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Id.* (citations omitted). The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D.

433, 459 (W.D. Tex. 1999). "The Court should consider all information which has been available to all parties." *DeHoyos*, 240 F.R.D. at 292.

Here, prior to mediation, Defendant shared with Class Counsel information about the scope of the Data Incident, the number of class members, and the Defendant's remedial efforts. Drawing on their significant and substantial experience in other data-breach class action litigation, Class Counsel were able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. *See generally* Bruce Dec, ECF 34-5. Because the parties "possess ample information with which to evaluate the merits of the competing positions," *Ayers*, 358 F.3d at 369, this factor also favors final approval of the proposed settlement. *See Reed*, 703 F.2d at 172.

**E.    The Settlement Terms Represent a Highly Favorable Compromise that Appropriately Balances the Merits of Plaintiff's Claims and the Likelihood of Success with the Attendant Risks.**

When evaluating a proposed class action settlement, "the most important factor is the [fourth *Reed* factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172 (5th Cir. 1983)). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages); *DeHoyos*, 240 F.R.D. at 290 ("Because the laws of numerous states may

be relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context."); *Combustion*, 968 F. Supp. at 1128 ("On the other hand, Plaintiffs will have very serious legal and evidentiary hurdles to meet in order to get their case to the jury.").

Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. Both of these factors likewise weigh in favor of final approval.

This Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Incident. Here, all Settlement Class Members are entitled to enroll in three years of three-bureau identity theft protection and credit monitoring services available to all Settlement Class Members. Additionally, all Settlement Class Members are eligible to submit a claim for up to $2,500 per individual for Ordinary Out-of-Pocket Losses and/or Ordinary Attested Time and a claim for up to $35,000 per individual for Extraordinary Losses and/or Extraordinary Attested Time related to the Data Incident. SA. ¶¶ 61-67. Ordinary Attested Time can be claimed for up to five (5) hours at a rate of $30 per hour and Extraordinary Attested Time can be claimed for up to ten (10) hours (in the aggregate) at a rate of $30 per hour by providing an attestation. *Id.* The Settlement Class Members will also be able to receive Pro Rata Cash Payments from the remainder of the Settlement Fund.

The Settlement terms are consistent with, and in fact exceed, agreement terms approved by Courts in other, similar data breach cases. *Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out of pocket expenses

and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh et al. v. IvyRehab Network, Inc*. No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Chacon et al. v. Nebraska Medicine*, No. 8:21-cv-00070 (Dist. Nebr.) (data breach settlement providing up to $300 in ordinary expense reimbursements including to 6 hours of lost time at $20 per hour; up to $3,000 in extraordinary expense reimbursements; one-year of automatic credit monitoring; data security enhancements); *Chatelain et al. v. C, L and W PLLC, d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (42nd Dist. Texas) (data breach settlement providing 12-months of credit monitoring services and no expense reimbursements). Upon final approval of the Settlement, the relief will be distributed by the Settlement Administrator to all Settlement Class members.

The value achieved through the Settlement is guaranteed, whereas chances of prevailing on the merits are uncertain. While Plaintiff strongly believes in the merits of his case, he also understand that Defendant asserts a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013).

Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face the risk of delayed relief or the possibility of no relief at all.

Through continued litigation, Settlement Class Members face increased risk, expense, and delay, holding up any potential recovery for Settlement Class Members for several more years. The proposed Settlement avoids these uncertainties and provides the Settlement Class with immediate and meaningful relief. *See generally* Bruce Dec, ECF 34-5. Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. *Id.* Accordingly, the Settlement should be finally approved under Rule 23(e)(2)(C)(i) and the fourth and fifth *Reed* factors. *See* Fed. R. Civ. P. 23(e)(2)I(C)(i)); *Reed*, 703 F.2d at 172.

## F.    Class Counsel and  Plaintiff Believe that the Settlement is in the Class's Best Interests.

Plaintiff and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of Class Members, which is an important consideration in any class settlement analysis. *See generally* Bruce Dec, ECF 34-5. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."); *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'") (quoting *Cotton*, 559 F.2d at 1330). Here, Class Counsel are highly experienced in class action litigation and were well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. ECF 34-5 ¶20. They have collectively recovered hundreds of millions of dollars for class members in other litigation,

including data breach cases. Accordingly, the sixth *Reed* factor further supports approval of the proposed Settlement. *See Reed*, 703 F.2d at 172; *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'").

**G.    The effectiveness of the proposed method of distributing relief to the  Class supports approval of the Settlement.**

Subject to Court approval, the Settlement Fund will be distributed pursuant to a proposed distribution set out in Section V of the Settlement Agreement. ECF 34-1, ¶¶ 68-75. Eligible claims will be paid electronically or via a check to Settlement Class Member. Given the simplified process for paying each Class Member and the pro rata distribution, this factor weighs in favor of approval under Fed. R. Civ. P. 23(e)(2)(C)(ii).

**H.    There is no agreement required to be identified under Rule 23(e)(3).**

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There are no agreements between the Parties here except those set forth or explicitly referenced in the Settlement Agreement. This factor is not relevant to whether the Settlement should be finally approved.

**I.    The Settlement Treats Settlement Class Members Equitably Relative to Each Other.**

The final factor, Rule 23(e)(2)(D), looks at whether Settlement Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provided for a Notice Program that is designed to reach as many Settlement Class Members as possible and provides Settlement Class Members with direct postcard notice of the Settlement. It also informed Settlement Class Members of their right to object to, or opt out of, the Settlement. All Settlement Class Members are entitled to enroll in three years of three-bureau identity theft protection and credit monitoring

services available to all Settlement Class Members. All Settlement Class Members are eligible to submit a claim for up to $2,500 per individual for Ordinary Out-of-Pocket Losses and/or Ordinary Attested Time and a claim for up to $35,000 per individual for Extraordinary Losses and/or Extraordinary Attested Time related to the Data Incident. SA. ¶¶ 61-67. Ordinary Attested Time can be claimed for up to five (5) hours at a rate of $30 per hour and Extraordinary Attested Time can be claimed for up to ten (10) hours (in the aggregate) at a rate of $30 per hour by providing an attestation. And, while Plaintiff seeks a $2,500 award for his services on behalf of the Class, this award is significantly *lesser than* any given Settlement Class Member can claim in reimbursements, and is justified by the benefits brought to the Class by the work of the Plaintiff. Thus, the Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D). *See* Fed. R. Civ. P. 23(e)(2)(D).

Each factor identified under Rule 23(e)(2) and as required by the Fifth Circuit in *Reed* is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the $1,000,000.00 recovery is a significant and meaningful result, designed to meet the types of repercussions sustained by Settlement Class Members following a data breach. It could not have been achieved without full commitment by Plaintiff and Class Counsel. Plaintiff and Class Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, that it meets each of the Rule 23(e)(2) and *Reed* factors, and final approval should be granted.

## VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT.

The Court previously concluded that it was appropriate to preliminarily certify the Settlement Class for settlement purposes only. See ECF 37, ¶ 1. Since preliminary approval, nothing has materially changed that should cause the Court not to finally certify this Settlement Class. Because the Settlement Class meets the requirements for certification under Rule 23(b)(3),

the Court should approve the Settlement Class for purposes of judgment on the Settlement. The Settlement Class also meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632. The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here.

### 1.    Numerosity

Rule 23 first requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). That said, a showing that the class consists of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 *Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992)); *see In re Talbert,* 347 B.R. 804, 808-809 (E.D. La. 2005) (finding numerosity requirement met when class potentially consisted of 88 members).

Here, the Settlement Class clearly surpassed the threshold required to establish numerosity as the proposed Settlement Class includes 57,177 individuals who had their Private Information compromised by the Data Incident, Accordingly, the Settlement Class is sufficiently numerous to justify certification.

### 2.    Commonality

Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes, et al,* 564 U.S. 338, 368 (2011) (citing Fed. R. Civ. P. 23). "The principal requirement of [*Dukes*] is merely a single common contention that enables the class action 'to generate common *answers* apt to drive the resolution of the litigation.'"

*In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (citing *M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 840 (5th Cir. 2012)). "These 'common answers' may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct." *Id.* Regardless, "a *single* common question will do." *Id.* (citing *Dukes,* 564 U.S. at 359) (emphasis added) (alterations in original).

Here, the commonality requirement is easily satisfied because Plaintiff can demonstrate numerous common issues exist. For example, whether Defendant failed to adequately safeguard the records of the Plaintiff and other Settlement Class Members is a question common across the entire class. Defendant's data security safeguards were common across the Settlement Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;

- Whether Defendant's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and

- Whether Defendant's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiff in his Amended Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiff, along with the Settlement Class has met the commonality requirement of Rule 23.

       3.    *Typicality*

Rule 23(a)(3) "requires that the named representatives' claims be typical of those of the class." *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 314 (5th Cir.2007). Here, Plaintiff and Settlement Class Members' claims all stem from the same event— suspicious activity that occurred on certain systems in Defendant's computer network and was discovered on October 12, 2022 (the Data Incident), and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiff's and Settlement Class Members' data. Thus, Plaintiff's claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

4.    *Adequacy of Representation*

The Court should also easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). This requirement is satisfied when (i) there are no substantial conflicts of interest between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017). The existence of minor conflicts of interest between the plaintiffs and the class "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d 790, 813 n.99 (5th Cir. 2014) (quoting *Valley Drug Co. v. Geneva Pharms., Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003)). Both prongs are satisfied here.

Plaintiff's interests are aligned with those of the Settlement Class in that Plaintiff seeks relief for injuries arising out of the same Data Incident. Plaintiff and Settlement Class Members' data was allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Settlement Class Members will all be eligible for the same reimbursement of Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses,

Extraordinary Attested Time and Pro Rata Cash Payments from the remainder of the Settlement Fund.

Further, Class Counsel have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Bruce Dec. ECF 34-5 ¶27; Moreover, they have put their collective experience to use in negotiating a settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

The Settlement Class also meets the demands of Rule 23(b)(3). "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at 614. Plaintiff seeks class certification under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

5.    *Common Legal and Factual Questions Predominate in This Litigation*

Common legal and factual questions predominate in this Litigation relating to the Data Incident and related allegations. The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to classwide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it does require that common questions predominate over any questions affecting only individual class members. *Id.* "A common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide

proof." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (citations and quotations omitted).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information of Plaintiff and the Settlement Class, and whether Defendant breached that duty. These issues are subject to "classwide proof" and "outweigh those issues that are subject to individualized proof." "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citations and quotations omitted). Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted) (collecting cases). The Settlement Class meets the predominance requirement for settlement purposes, and certification will meet the objective of Rule 23(b)(3) to promote economy and efficiency of time, effort, and expense over separate suits.

### 6.    *A Class Action is the Superior Means to Adjudicate Plaintiff's Claims*

The Court should find that the class action is the superior means of adjudication under Rule 23(b)(3). Each of the Rule 23(b)(3) factors, below, weigh in favor of finding superiority:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

All of these factors favor class treatment in this case. The value of each Settlement Class Members' claim is relatively so much smaller than the cost it would take to litigate individual actions. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. It is desirable to concentrate the litigation of the claims into the present forum in view of the scale of the class under Rule 23(b)(3)(C). Additionally, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* Data Incident. The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

## VII.    THE INDIVIDUAL AND DIRECT NOTICE PROVIDED TO SETTLEMENT CLASS MEMBERS IS THE BEST PRACTICABLE, MEETS DUE PROCESS CONSIDERATIONS, AND WEIGHS IN FAVOR OF FINAL APPROVAL.

Because an action maintained as a class suit under Rule 23 has *res judicata* effect on all members of the class, due process requires that notice of a proposed class settlement be provided to settlement class members. The notice provided must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). In addition, the notice must convey the required information and allow a

reasonable time for those interested in making an appearance to do so. The mechanics of the notice process are left to the broad discretion of the court. Wright and A. Miller, *Federal Practice and Procedure,* at 237 (1972). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements."  *ODonnell*, No. CV H-16-1414, 2019 WL 4224040, at *26. Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id.* (citations and quotation marks omitted).

Here, Kroll caused the mailing of 57,177 Postcard Notices via first-class mail. Settlement Admin Dec ¶ 9. This notice was the best practicable under the circumstances. It was clear, concise, and pointed each  Settlement Class Member to the resources necessary for them to get additional information, review pleadings, make a claim, request exclusion, object, or to reach Class Counsel should they have any additional questions. The United States Supreme Court has specifically held that individualized notice by mail to the last known address is the "best notice practicable" in a class action context. *Eisen v. Carlisle & Jaquelin,* 417 U.S. 156, 174-77 (1974). In contrast with notice via publication, providing individualized mail notice to  Class Members—coupled with the Settlement Administrator's efforts to search for, locate, and confirm current information for  Class Members—*ensures* that Settlement Class Members are provided with the best practicable notice of the Settlement, and the opportunity to make a claim, opt-out, or object. Courts regularly approve the use of mail to directly notify potential class members of a class action settlement. *Petrovic v. Amoco Oil Co.,* 200 F.3D 1140, 1153 (8th Cir, 1999). The Settlement Website, toll-free phone number, and email contact form provided additional forums for Settlement Class Members to access information about the Settlement and relevant filings. The Notice program satisfies the requirements of both Rule 23 and due process.

As outlined above, the notice program here was a successful one, with a reach of 90.05%. Settlement Admin Dec. Ex. A.  This successful notice program meets due process considerations, and weighs in favor of final approval of this Settlement.

### A. THE COURT SHOULD APPOINT UNDERSIGNED COUNSEL AS CLASS COUNSEL AND THE NAMED PLAINTIFF AS THE CLASS REPRESENTATIVE.

The Court preliminarily appointed Bruce Steckler of Steckler Wayne & Love, PLLC and John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Class Counsel. ECF 37 at ¶ 6. Upon the Court's certification of the Settlement Class for purposes of entry of judgment on the Settlement, Plaintiff requests that these counsel be appointed Class Counsel for the Settlement Class under Rule 23(g)(1). In addition, because Plaintiff Arturo Bruno has diligently and successfully fulfilled his responsibilities as the representative of the class as initially certified and the proposed Settlement Class, the Court should appoint him as the Class Representative.

### CONCLUSION

Class Counsel, with the help of Plaintiff, obtained significant benefits for Settlement Class Members during a time where the law surrounding data breaches is evolving and remains uncertain. The Class Members were provided direct and individual notice of the Settlement and given additional resources by which they could and can get more information about the Settlement Agreement. No Class Members have objected to either the Settlement or to Plaintiff's request for attorneys' fees, costs, and service awards. For these reasons, for the reasons for class certification and appointment of Plaintiff and Class Counsel set forth in Plaintiff's Memorandum in Support of Motion for Preliminary Approval (ECF 34), and because the Settlement is fair, reasonable, and adequate, Plaintiff requests this Court grant his motion for final approval following the Fairness Hearing on November 5, 2025 and grant the motion for attorneys' fees, costs, and litigation expenses and service awards.

Date: September 29, 2025

/s/ John A. Yanchunis
Bruce W. Steckler
Texas Bar No. 00785039
**Steckler Wayne & Love,
PLLC**
12720 Hillcrest Road
Dallas, Texas 75230
Telephone: (972) 387-4040
Fax: (972) 387-4041
bruce@swclaw.com

John A. Yanchunis
Texas Bar No. 22121300
**MORGAN & MORGAN
COMPLEX LITIGATION
GROUP**
201 N. Franklin Street, 7th
Floor
Tampa, Florida 33602
Telephone: 813-559-4908
Facsimile: 813-222-4795
jyanchuins@forthepeople.com

*Attorneys for Plaintiff and the
Settlement Class*